IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SIMONTON BUILDING PRODUCTS, INC.,

        Plaintiff,

v.                   //   CIVIL ACTION NO. 1:07CV62
                             (Judge Keeley)

ORIN S. JOHNSON, GARY A. JONES,
and AM-RAD, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion filed by Defendants Orin S. Johnson ("Johnson"), Gary A. Jones ("Jones") and Am-Rad, Inc. ("Am-Rad") (jointly "the Defendants") seeking to dismiss Plaintiff Simonton Building Products Inc.'s ("Simonton") Complaint for Declaratory Judgment. In its Complaint, Simonton asks the Court to rule that Johnson and Jones should not be named as inventors on two pending patent applications filed by Simonton, and seeks a declaration that the claims pending in those two applications do not incorporate or improve upon claims from two already-issued patents belonging to Am-Rad.

For the reasons discussed in this opinion, the Court **GRANTS** the Defendants' motion to dismiss, **DISMISSES** Simonton's claims for declaratory relief, and **ORDERS** that this case be dismissed from its docket.

<u>MEMORANDUM OPINION AND ORDER</u>

### I.  BACKGROUND

Simonton, a West Virginia corporation, manufactures and sells windows and related fenestration products.  Jones and Johnson, who both reside in Minnesota, are the named inventors on two patents, U.S. Pat. No. 5,855,720 and U.S. Pat. No. 5,902,447, (the "Am-Rad patents"), both of which pertain to methods and technology used in joining plastic extrusions.  Specifically, each of these patents sets forth an apparatus and process for creating a flash-free weld between the ends of thermoplastic members, through the use of radiant heat technology and a cutting edge.  This technology can be used in the manufacture of windows and related fenestration products.  After obtaining these patents, Johnson and Jones assigned their ownership rights in them to Am-Rad, a Minnesota corporation.

In 2004, Simonton and the Defendants entered into a License Agreement for the use of these patents. The agreement provides, among other things, that Simonton may use the Am-Rad patents in developing new joining technologies as long as the new technologies do not infringe on the patents.  Any new joining technologies developed by Simonton are to remain its sole and separate property. Indeed, if either Simonton or Johnson and Jones develops technology improving upon the Am-Rad patents and warranting a new patent

application, the party applying for the patent will bear all of its own expenses. If, however, any party pursues a new patent incorporating any claims from the Am-Rad patents, "then the patent shall be included in this License Agreement without additional fees or expenses paid."

Finally, the License Agreement establishes that the parties will enter into a "Joint Venture," organized as a Limited Liability Corporation ("LLC") under West Virginia law, to promote marketing and sales of the flash-free welding technology described in the Am-Rad patents. Defendants agreed to contribute to the capital of the LLC by giving the ownership of the Am-Rad patents to the LLC, as well as any enhancements to those patents or additional flash-free welding patents that the Defendants may acquire, if the new patents incorporate the claims of the existing patents. Simonton agreed to contribute to the LLC "any enhancements or additional patents it may acquire as the result of placing into production" products utilizing the Am-Rad patents that incorporate "claims of the patents . . . and improvements thereto." Pursuant to the terms of the License Agreement, the parties were obligated to form the Joint Venture and start marketing its assets to the fenestration industry no later than October 2007.

<u>MEMORANDUM OPINION AND ORDER</u>

On December 30, 2005, Simonton filed a patent application ("the '563 application") for "Method & Apparatus for Window Manufacture." On December 15, 2006, Simonton filed a second patent application ("the '456 application") entitled "Fenestration Product and Method and Apparatus for Manufacture." Simonton did not include Johnson and Jones as inventors on either application, listing Charles Kownacki as the sole inventor on both. Simonton contends that these applications do not incorporate any claims from the Am-Rad patents, and thus fall outside the scope of the licensing agreement with the Defendants. Simonton paid all of the costs of applying for these patents.

On May 3, 2007, Simonton filed this "Complaint For Declaratory Judgment of Non-Inventorship and Determination of Contractual Obligations." In Counts I and II of its Complaint, Simonton alleges that Johnson and Jones have demanded to be added as inventors on the '563 and '456 applications, but that they have refused to identify any claims or portions of claims in the pending applications to which either of them contributed. Simonton seeks a declaratory judgment that Johnson and Jones are not inventors of any subject matter claimed in the pending '563 and '456 patent applications.

In Counts III and IV, Simonton alleges that the Defendants have demanded that it contribute the '563 and '456 applications to the capital of the LLC pursuant to the terms of the Joint Venture and License Agreement. Simonton asks the Court to declare that neither the '563 application nor the '456 application incorporates or improves upon any claims in the Am-Rad patents, and that neither application, therefore, must be contributed to the License Agreement or Joint Venture.

Simonton's Complaint alleges that this Court's jurisdiction to hear its case rests on diversity of the parties, 28 U.S.C. § 1332, and federal question, 28 U.S.C. § 1331. It asserts that the claims arise under 28 U.S.C. § 1338, which provides federal courts with authority to hear all claims arising under any act of Congress relating to patents. Finally, it alleges that the relief requested is proper pursuant to 28 U.S.C. §§ 2201 and 2202, both of which provide the Court with authority to issue declaratory judgments or other proper relief in cases "of actual controversy within its jurisdiction."

On June 26, 2007, the Defendants responded by filing this motion to dismiss in which they argue that the Court lacks subject matter jurisdiction to hear the claims, that the claims are not ripe for adjudication, and that no justiciable controversy exists

upon which this Court could issue a declaratory judgment. Accordingly, they ask the Court to dismiss Simonton's claims with prejudice.

## II.  LEGAL STANDARDS

Pursuant to the Declaratory Judgment Act, which provides a federal district court with authority to issue a declaratory judgment,

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (1993).  The Fourth Circuit Court of Appeals has interpreted this statute as giving a federal district court "the discretion to decline to entertain a declaratory judgment action." Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994).  Fourth Circuit precedent, however, requires that a court only decline such action for "good reason." Id. (quoting Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937).  Good reason exists when the declaratory relief sought

> (I) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Id. at 965-66 (quoting Nautilus Ins. Co. v. Winchester Homes, 15 F.3d 371, 375 (4th Cir. 1994)) (internal quotations omitted).

While 28 U.S.C. § 2201 provides a federal court with authority to issue declarations in cases of actual controversy, it does not create a basis for federal subject matter jurisdiction and, accordingly, is only appropriate in cases in which an independent basis for such jurisdiction exists. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239-40 (1937). Thus, in a case with independent subject matter jurisdiction, a district court may issue a declaratory judgment if it determines that an actual case or controversy exists - the constitutional inquiry - and that good reason exists to issue the declaration - the prudential inquiry. See White v. Nat. Union Fire Ins. Co. of Pittsburgh, PA, 913 F.2d 165, 167 (4th Cir. 1990).

In this case, the Defendants assert that issuance of a declaratory judgment is improper for Counts I and II of Simonton's Complaint because, under Federal Rule of Civil Procedure 12(b)(1), the Complaint fails to allege facts upon which subject matter jurisdiction can be based. While the Defendants acknowledge federal subject matter jurisdiction exists for Counts III and IV, they challenge those counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Simonton has failed to state

a claim upon which relief may be granted, either because the claims are not ripe, or, alternatively, because no justiciable controversy exists as required by the Declaratory Judgment Act.

Under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007)(internal quotations omitted). The same rule applies to the Defendants' Rule 12(b)(1) motion, because, where such motion is based on the premise that the Complaint fails to allege facts upon which subject matter jurisdiction can be based, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Therefore, in determining whether the Court has jurisdiction to hear the claims in Counts I and II, and whether Simonton has failed to state a claim upon which relief may be granted in Counts III and IV, the Court will accept as true all factual allegations in Simonton's Complaint.

### III. LEGAL ANALYSIS

### A. Motion to dismiss Counts I & II.

In seeking a declaration that Johnson and Jones are not inventors of the subject matter contained in the '563 and '456 patent applications, Simonton states that the named inventor on the

8

'563 and '456 applications, Charles Kownacki, has signed an affidavit attesting to the fact that he is the original and first inventor of the subject matter of these patents.  According to Simonton, should Johnson and Jones prove that they have legitimate claims to inventorship, it will amend its pending patent applications to correctly identify them as inventors.  Further, it contends that a determination of non-inventorship is central to the parties' contractual obligations under the licensing agreement, and that a determination of these obligations is necessary for Simonton to plan its future business.

In their motion to dismiss, the Defendants argue that a decision regarding inventorship in a pending patent application is the exclusive province of the U.S. Patent and Trademark Office ("PTO"), and this Court, therefore, lacks subject matter jurisdiction to decide Counts I and II.

1.

The relevant federal statute, 28 U.S.C. § 1338(a), confers jurisdiction on federal courts to hear any action arising under any act of Congress relating to patents.  The United States Supreme Court has clarified, however, that jurisdiction under this statute extends only to

> those cases in which a well-pleaded complaint establishes
> either that federal patent law creates the cause of

> action or that the plaintiff's right to relief
> necessarily depends on resolution of a substantial
> question of federal patent law, in that patent law is a
> necessary element of one of the well-pleaded claims.

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09

(1988).   Thus, for a court to exercise jurisdiction under §

1338(a), federal patent law must explicitly provide a cause of

action or, alternatively, a court must determine that a plaintiff's

right to relief depends on resolution of a question of patent law.

Two federal statutes govern determinations of inventorship.

One establishes procedures for amending the named inventors on an

already issued patent, and the other provides for adding or

removing inventors on a pending patent application.   For patents

that have already issued, 35 U.S.C. § 256, entitled "Correction of

Named Inventor," provides that, on application of the parties and

assignees, the Director of the PTO ("the Director") may issue a

certificate correcting the named inventors.   Alternatively, a court

may also order that a patent be corrected, and the Director of the

PTO "shall issue a certificate accordingly."   Id.

In contrast, 35 U.S.C. § 116, which governs the procedure for

naming inventors on pending patent applications, vests the decision

regarding inventorship solely in the Director of the PTO:

> Whenever through error a person is named in an
> application for patent as the inventor, or through error
> an inventor is not named in an application, and such

> error arose without any deceptive intention on his part,
> the Director may permit the application to be amended
> accordingly, under such terms as he prescribes.

35 U.S.C. § 116 (2002).  Courts have consistently interpreted this language to mean that only the Director of the PTO may determine who should be named an inventor on a pending patent application. E.g. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1357 n. 1 (Fed. Cir. 2004); Sagoma Plastics, Inc. v. Gelardi, 366 F.Supp.2d 185 (D. Me. 2005).

In Eli Lilly, the plaintiff attempted to base a claim for inventorship of a pending patent on § 116; by the time the case went to trial, however, the patent had been granted.  376 F.3d at 1357 n. 1.  To allow the claim to proceed, the district court constructively amended Lilly's complaint to base the claim on § 256, which does grant jurisdiction to district courts to decide inventorship.  Id.  In reviewing the district court's decision, the Federal Circuit Court of Appeals addressed the distinction between § 116 and § 256, stating that the text of § 116 "only grants the Director of the Patent and Trademark Office the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications."  Id. (emphasis added).  The Federal Circuit did not,

however, address whether a district court would have <u>jurisdiction</u> to hear such a claim.

2.

While courts generally agree that § 116 does not create a cause of action, they differ greatly as to whether courts retain jurisdiction over motions for declaratory judgment regarding inventorship on pending patent applications.  In <u>E.I. Du Pont de Nemours & Company v. Okuley</u>, the Sixth Circuit Court of Appeals found that Congress intended to draw a distinction between patent applications and issued patents when determining who is authorized to decide the question of inventorship.  344 F.3d 578, 584 (6th Cir. 2003), <u>cert.</u> <u>denied</u>, 541 U.S. 1027 (2004).  The court compared the language of 35 U.S.C. § 116 with that of 35 U.S.C. § 256 and found that there are "notable differences" between the two, because § 256 specifically provides that <u>courts</u> have authority to compel the Director to amend a patent to include an inventor, while § 116 does not mention courts and gives sole discretion for such decisions to the Director of the PTO.  <u>Id.</u> at 583-84.  Without further explanation, the appellate court concluded that district courts lack jurisdiction to review the inventorship of an unissued patent.  <u>Id.</u>

<u>MEMORANDUM OPINION AND ORDER</u>

In contrast to <u>E.I. Du Pont</u>, several district courts have found that jurisdiction exists under § 1338(a), but nevertheless have declined to exercise that jurisdiction pursuant to Rule 12(b)(6) or on other policy concerns.[1]  In <u>Saqnoma Plastics, Inc. v. Gelardi</u>, 366 F.Supp.2d 185, 186 (D. Maine 2005), for example, pursuant to Rule 12(b)(6), the district court dismissed a claim seeking a declaratory judgment regarding inventorship on a pending patent application.  In analyzing the claim, the court relied on <u>Eli Lilly</u> and <u>E.I. DuPont</u> and held that § 116 provides neither an express nor implied private right of action.  <u>Id.</u> at 189.  It then concluded that, "[w]ithout a private right of action, Plaintiff's claims must fail even if this Court has jurisdiction under the <u>Christianson</u> analysis."  <u>Id.</u>  It explained that 28 U.S.C. § 2201, the Declaratory Judgment Act, does not create a cause of action, but merely allows a federal court to hear a cause of action created by Congress in federal patent law.  <u>Id.</u>  The plaintiff's claims, it

---

[1]     Simonton cites a district court case in which the court agreed to exercise its jurisdiction under 28 U.S.C. § 1338 over a claim made pursuant to 35 U.S.C. § 116, in which the plaintiff sought a declaration that it was the rightful inventor of the subject matter of a pending patent application.  <u>Heineken Technical Services v. Darby</u>, 103 F.Supp.2d 476, 476-77 (D. Mass. 2000).  This case is unpersuasive authority, however, because the court failed to address the issue of whether § 116 limited decisions about inventorship on pending patent applications to the Director of the PTO, and, indeed, this case was decided before <u>Eli Lilly</u> and <u>E.I. Du Pont</u>.

concluded, failed to state a cause of action pursuant to Rule 12(b)(6).

In Concrete Washout Systems, Inc. v. Minegar Environmental Systems, Inc., 2005 WL 1683930, at *3 (E.D. Cal. July 12, 2005), the plaintiff company sought a declaration that its president was the inventor of the invention described in a pending patent application, and that the defendants, who had filed the application, had a duty to amend it to identify the correct inventor. Id. at *3.

Finding first that 28 U.S.C. § 1338(a) provides subject matter jurisdiction to resolve inventorship issues in pending patent applications, the Court declined to exercise its jurisdiction because the PTO had not yet had an opportunity to reach the issue. Doing so, the court said, "comports with the text of the Patent Act which implicitly recognizes that the court is best advised to reach issues of inventorship after the PTO has reached them." Id. at *4. In passing, the court noted that, depending on what happened in the application process, a decision by it on inventorship could become moot. Id. Alternatively, if the plaintiff in the case was not satisfied by the PTO's decisions, it could challenge inventorship under 35 U.S.C. § 256 after the patent had issued. Id.

MEMORANDUM OPINION AND ORDER
_____

3.

The reasoning in these cases is sound.  Under 35 U.S.C.
§ 1338, this Court arguably retains jurisdiction over Simonton's
case, even though federal patent law does not provide a cause of
action, because the claim is one in which Simonton's right to
relief "depends on resolution of a substantial question of federal
patent law."  Christianson, 486 U.S. at 808-09.  Nevertheless,
inasmuch as this claim arises under the federal Declaratory
Judgment Act, 28 U.S.C. § 2201, the Court may decline to exercise
its jurisdiction for a "good reason."  See Continental Cas. Co., 35
F.3d at 965-66.  In the Court's view, entering any judgment at this
time would not "serve a useful purpose in clarifying and settling
the legal relations in issue," id., because decisions regarding
inventorship by a district court while a patent application is
pending are not binding on the PTO.

Indeed, the PTO has a process for addressing the issue of
inventorship in pending patent applications.  Specifically, such
disputes are handled through interference proceedings over which
the PTO has exclusive jurisdiction.  Display Research Labs., Inc.
v. Telegen Corp., 133 F.Supp.2d 1170, 1175 (N.D.Cal. 2001);
Consolidated World Housewares, Inc. v. Finkle, 831 F.2d 261, 265
(Fed. Cir. 1987)(stating that 35 U.S.C. § 135(a) provides the PTO

with exclusive jurisdiction to conduct an interference proceeding on a pending patent application.)  Thus, were this Court to declare that Johnson and Jones are not inventors of the inventions in the '456 and '563 applications, nothing would prohibit them from initiating an interference at the PTO and possibly obtaining a different decision.  Accordingly, a declaration on inventorship at this stage would not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," Continental Cas. Co., 35 F.3d at 965-66.

In sum, there is no federal cause of action providing a district court with authority to determine inventorship for Simonton's pending patent application.  While, under 35 U.S.C. § 1338, the Court retains subject matter jurisdiction over the claim because Simonton's right to relief depends upon the resolution of an issue of patent law, declining to exercise such jurisdiction in the present case where the issue is pending before the PTO fosters the interests of judicial economy.

### B.  Motion to dismiss Counts III & IV.

In Counts III and IV of its Complaint, Simonton seeks a declaration that neither the '563 application nor the '456 application incorporates any claims from either of the Am-Rad patents.  It further seeks a declaration that it has no contractual

duty to contribute the pending patent applications to the parties'
Joint Venture.  The Defendants seek dismissal of Counts III and IV,
arguing that whether the '563 and '456 applications incorporate
claims from the Am-Rad patents is not yet ripe for review because
of the pending PTO proceedings.

1.

The doctrine of judicial ripeness requires that courts avoid
issuing premature decisions by ensuring that any controversy
presented is "sufficiently direct and immediate."  See Abbott
Laboratories v. Gardiner, 387 U.S. 136, 152 (1967)(abrogated on
other grounds).  "To determine whether the case is ripe, we balance
the 'fitness of the issues for judicial decision with the hardship
to the parties of withholding court consideration.'"  Miller v.
Brown, 462 F.3d 312, 319 (4th Cir. 2006) (quoting Franks v. Ross,
313 F.3d 184, 194 (4th Cir. 2002)).  "Both prongs must be satisfied
before an Article III court may apply its adjudicative powers to a
case's merits."  Cedars-Sinai Medical Center v. Watkins, 11 F.3d
1573, 1581 (Fed. Cir. 1993).

Here, the Court need not reach the issue of hardship to the
parties because it finds that the case fails to meet the first
prong of the ripeness test.  "A case is fit for judicial decision
when the issues are purely legal and when the action in controversy

is final and not dependent on future uncertainties." <u>Miller</u>, 462
F.3d at 319 (<u>citing</u> <u>Charter Fed. Sav. Bank v. Office of Thrift</u>
<u>Supervision</u>, 976 F.2d 203, 208 (4th Cir. 1992)). Because
substantial future uncertainties bear on the controversy at issue
here, the Court concludes that Counts III and IV are unripe.

2.

Simonton attempts to artfully narrow the issues presented in
Counts III and IV by framing them as questions of contract
construction rather than patent law. However, for the Court to
interpret the language of the License Agreement in order to
determine whether the '563 and '456 applications should be
contributed to the LLC, it will have to review the invention and
methodology described in the Am-Rad patents and compare those to
the invention and methodology described in Simonton's pending
applications. At bottom, this is the same claim review process
undertaken by the PTO.

Exhibit A of the License Agreement sets forth the pertinent
terms of the Joint Venture and provides that:

> Simonton shall contribute to the capital of the LLC <u>any</u>
> <u>enhancements or additional patents it may acquire as the</u>
> <u>result of placing into production products utilizing the</u>
> <u>Flash-Free Welding Technology which incorporates claims</u>
> <u>of the [Am-Rad] patents</u> (as described in the License
> Agreement) <u>and improvements thereto</u>, in consideration for
> [its interest in the LLC].

(Emphasis added). Because the Agreement states that "any enhancements or additional patents" must be contributed to the Joint Venture, Simonton argues that the pending applications, not merely any patents that may ultimately issue from them, may have to be contributed to the Joint Venture if they "incorporate" claims of the Am-Rad patents or include "improvements thereto." Simonton, therefore, wants the Court to construe the terms "any enhancements," "placing into production products utilizing the Flash-Free Welding Technology [i.e. the Am-Rad Patents]," "which incorporates claims of the [Am-Rad] patents," and "improvements thereto." It argues that, once it has defined those terms, the Court can then decide whether the '563 and '456 applications must be contributed to the Joint Venture.

The Defendants contend that it is impossible for the Court to determine whether the '563 and '456 patent applications are subject to the License Agreement without construing the claims contained in those applications. They note that the claims are the only part of a patent application that can ultimately be patented, and, therefore, the Court must look to the claims to determine if they incorporate either the inventions described in the Am-Rad patents or any enhancements thereto. Because the claims in the pending patent applications have not yet been "allowed" by the PTO, they

are subject to being modified, amended, added to or deleted during the patent prosecution process.  A decision construing those claims at this stage would not be final, and the controversy, therefore, not ripe for review.

Simonton admits that the text and scope of claims in a pending patent application are subject to change during the application process, but asserts that the substance of claims is not.  It contends that every allowed claim in the Am-Rad patents includes a "cutting edge," and that, because no requirement or mention of a cutting edge can be found anywhere in its '563 and '456 applications, its proposed inventions do not incorporate claims from the Am-Rad patents.  Since new subject matter cannot be added to the claims, Simonton concludes that the issues discussed in Counts III and IV are ripe for review.

3.

Aa a matter of law, the '563 and '456 applications cannot be amended to add a new substantive feature, such as a cutting edge, to the proposed inventions.  35 U.S.C. § 132(a) (2002) ("No amendment shall introduce new matter into the disclosure of the invention.").  Every patent application includes a "disclosure" or "specification" which provides "a written description of the invention and the manner and process of making and using the same."

United States Patent and Trademark Office, Glossary, http://www.uspto.gov/main/glossary/index.html (last visited March 24, 2008).

In addition, a patent application must present one or more claims that clearly set forth the subject matter that the applicant asserts as his invention and that "conform to the invention as set forth in the remainder of the specification . . . ." Id. Accordingly, a claim will only be allowed if it is adequately described in the written description. See In re Alton, 76 F.3d 1168, 1172 (Fed. Cir. 1996) ("In order to meet the adequate written description requirement . . . the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed.")

While the Court could review the written descriptions of the '563 and '456 applications to determine whether the inventions described include a cutting edge, such limited review would not dispose of the issues presented in this case. The License Agreement provides that any "enhancements" incorporating claims from, or otherwise improving upon, the Am-Rad patents must be contributed to the Joint Venture. To make such a determination requires construction of the claims of the pending '563 and '456 applications, because those claims are the part of the patent

21

application that describe the alleged invention.  Thus, the Court
could not declare that the pending applications do not improve upon
the Am-Rad patents without reviewing their claims.  Because those
claims have not yet been allowed by the PTO, and may be subject to
some future modification, they lack the finality needed to make
them "fit for judicial decision."  See Miller, 462 F.3d at 319.

     Moreover, as part of its review of the '563 and '456
applications  to determine whether to "allow" the claims, the PTO
will compare the alleged inventions to those in the Am-Rad patents.
In doing so, it will assess the prior art to determine whether
Simonton has developed "new" inventions worthy of issuing patents.
It could reject the '563 and '456 applications on the basis of
obviousness or anticipation, or find that they read on the Am-Rad
patents.  In other words, the relationship between the claims in
the pending applications, when compared to the Am-Rad patents, will
be considered and determined by the PTO.  Any declaration by the
Court at this time as to the claims would be subject to being
undone or mooted by a subsequent ruling by the PTO.

     Because the claims in the patent applications at issue here
are not in their final form, and because so many uncertainties
surrounding their ultimate fate at the PTO, this case does not meet
the first prong of the ripeness test, see Miller, 462 F.3d at 319,

and the Court concludes that Counts III and IV are not ripe for review at this time.

4.

The same prudential considerations the Court considered under Section III, A, in declining to exercise jurisdiction over Counts I and II, also weigh heavily against the issuance of a declaratory judgment as to Counts III and IV. Indeed, a declaration at this stage would neither "serve a useful purpose in clarifying the legal relations in issue" nor "terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." White, 913 F.2d at 168; Continental Cas. Co., 35 F.3d at 965-66. As already discussed, there simply is too much uncertainty about the ruling of the PTO regarding the '563 and '456 patent applications that could undermine or moot any ruling regarding whether those applications are enhancements that incorporate or improve upon the claims in the Am-Rad patents.

Accordingly, a judgment by this Court would not provide the relief from uncertainties and insecurities that the parties seek. Good reasons exist, therefore, under the prudential analysis for the Court to decline to exercise its declaratory judgment authority as to the claims in Counts III and IV of Simonton's Complaint.

### IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motion to dismiss (dkt. no. 14), **DISMISSES** Simonton's Complaint for Declaratory Judgment, and orders this case stricken from the Court's docket.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to Counsel of record.

Date: March 31, 2008

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE